IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Daniel Shannon,<br><br>                Plaintiff,<br><br>vs.<br><br>South Carolina Department of Corrections; Mr. William Byars, Jr., Director, the SCDC; John Ozmint; Robert Ward, Division Director, SCDC; David McCall, Warden, Perry Correctional Institution; Daniel Murphy; Elbert Pearson, SCDC STG Coordinator; Jannita Gaston, Chair of the MSV Committee, SCDC; Dennis Patterson, SCDC; Dedric Williams; Colie Rusthton, SCDC; Aaron Joyner, Associate Warden, KCI; Bernard McKie, Warden, KCI; Yvonne Lofton, Classification, KCI; Vaughn Jackson, Major, KCI; John Does; Jane Does,<br><br>                Defendants. | Civil Action No. 6:12-2938-JFA-KFM<br><br>**ORDER AND**<br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (docs. 21, 25). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

## BACKGROUND

The plaintiff is an inmate with the South Carolina Department of Corrections ("SCDC") in the Maximum Security Unit ("MSU") at Kirkland Correctional Institution ("KCI").

He was transferred to the MSU from Perry Correctional Institution ("PCI") on June 25, 2009, after accumulating a record within SCDC that included an attempt to have PCI officers provide him with contraband, possessing SCDC employee personal information, a gang affiliation, and his purported role in a credit card fraud (comp. ¶ 31).

After his transfer to the MSU, the plaintiff filed a separate lawsuit in this court (C/A No. 6:11-2332-JFA-KFM) challenging his institutional conviction for the attempt to obtain contraband and the resulting transfer to the MSU. In that case, the undersigned issued a Report and Recommendation on June 19, 2013, recommending that summary judgment be granted to the defendants. That matter is now pending before the Honorable Joseph F. Anderson, Jr., United States District Judge. In the above-captioned case, the plaintiff again complains about his perceived lack of due process leading up to his transfer and continued detention in the MSU. He seeks damages, as well as declaratory and injunctive relief, including a declaration that his constitutional rights have been violated, a declaration that SCDC Policy OP-22.11 does not provide the minimum due process requirements as set forth in *Wilkinson v. Austin*, 545 U.S. 209 (2005), an injunction requiring the SCDC to revise its policies so as to comply with *Wilkinson*, and an injunction requiring his release from the MSU (comp. pp. 24-25).

The plaintiff names a number of SCDC officials as defendants, setting forth their respective titles and responsibilities in the opening paragraphs of his complaint. However, the plaintiff names only defendants Ozmint, Ward, and Gaston in his "Statement of Facts" section: he contends he wrote to former SCDC Director Ozmint to protest his placement in the MSU and that Ward and Gaston later contacted him in writing on the subject. No other specific factual allegations are made against the remaining defendants.

In his complaint, the plaintiff alleges that after his transfer to the MSU on June 25, 2009, he received notice from Operations Director Ward that the MSU Review Committee met on July 14, 2009, and recommended that the plaintiff be housed in the MSU. The relevant SCDC policy for appeal of MSU placement reads as follows:

> Paragraph 5.2 of OP-22.11, "Maximum Security Unit" : Inmates may appeal MSU placement or denial of release from MSU directly to the Agency Director. The written appeal must be initiated no later than ten (10) working days (Monday through Friday) after the inmate's admission to MSU. Specific reasons for the appeal must be given by the inmate. The Agency Director will respond to this appeal within 30 working days form the date of the appeal.

(doc. 1-1, p. 13). On August 22, 2009, the plaintiff wrote a letter to Director Ozmint complaining of his MSU placement and rebutting the Committee's reasons for recommending his placement in MSU (*id.*, pp. 2-5). On February 15, 2010, the plaintiff wrote another letter to Ozmint, inquiring about the status of his appeal (*id.*, pp. 6-10). Classification Director Gaston responded by letters dated March 17 and 29, 2010, stating that her office had no record of an appeal by the plaintiff regarding his placement in the MSU and that he was not eligible to be considered for release from MSU at that time. Gaston noted that in accordance with SCDC policy regarding recommendation for release from the MSU, an inmate upon completion of 18 months minimum term and any appropriate extensions, and when the inmate has shown good behavior and progress in Level III for the previous six months, the inmate may be considered for reassignment to the Special Management Unit ("SMU") (*id.*, pp.11-12). On October 11, 2010, Gaston sent the plaintiff a letter in response to an undated letter from him regarding his placement in the MSU. Gaston told the plaintiff that the office had no record of an appeal regarding his placement in the MSU within the required time period, so his appeal would not be considered (*id.*, p. 14). Thereafter, the plaintiff was notified by Ward that the MSU Review Committee met again on April 12, 2011, and recommended that he remain in the MSU (*id.*, p. 15). The plaintiff alleges that his continued placement in MSU imposes upon him "atypical and significant hardship in relation to the ordinary incidents of prison life," and the defendants have deprived him of his substantive and procedural due process rights by "indefinitely confining [him] to . . . the MSU without affording him meaningful notice and a meaningful hearing" (comp. ¶¶ 19-20).

The plaintiff delivered his complaint to the KCI mailroom on October 10, 2012, and it was filed on October 12, 2012.[1]  On February 1, 2013, defendant Ozmint filed a motion to dismiss (doc. 21).  On February 4, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), this court advised the plaintiff of the motion to dismiss and motion for summary judgment procedures and the possible consequences if he failed to adequately respond to the motion.  On February 19, 2013, the remaining defendants filed a motion to dismiss (doc. 25).  Again, this court issued a *Roseboro* order to the plaintiff.  Thereafter, the plaintiff filed timely responses in opposition to both motions (docs. 29, 33).

## APPLICABLE LAW AND ANALYSIS

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978), and a court is charged with liberally construing a complaint filed by a pro se litigant to allow for the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The requirement of liberal construction, however, does not mean the court can ignore a clear failure to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't. of Soc. Servs.*, 901 F.2d 387 (4th Cir.1990).

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the opposing party fails to state a claim for which relief can be granted.  Federal Rule of Civil Procedure 8(a) sets forth a liberal pleading standard, which requires only a " 'short and plain statement of the claim showing the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts

---

[1] As the plaintiff is a prisoner, he should have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), which held that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the District Court.

4

to state a claim to relief that is plausible on its face.' " *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Accordingly, a complaint does not require detailed facts; however, a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

*Factual Allegations*

As noted above, the plaintiff named only defendants Ozmint, Ward, and Gaston in his Statement of Facts section of his complaint. No specific factual allegations against the remaining defendants are presented at all. The allegations presented are clearly insufficient to comply with Rule 8, as they do not put these remaining defendants on fair notice of what they each allegedly did to violate the plaintiff's constitutional rights nor how they each could be held liable. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." *Lewis v. Lappin,* No. 3:10cv426, 2011 WL 2414418, at *2 (E.D. Va. June 13, 2011) (citation omitted). *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail.").

To the extent the plaintiff seeks to hold any of these remaining defendants liable in their supervisory capacities, the doctrine of respondeat superior generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people

like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The plaintiff has failed to establish any of these required elements as to the remaining defendants.

Based upon the foregoing, the undersigned recommends that all defendants other than Ozmint, Ward, and Gaston be dismissed as the plaintiff has failed to allege any personal connection between those defendants and any denial of his constitutional rights.

***Eleventh Amendment Immunity***

To the extent the defendants are sued in their official capacities, they correctly assert that they are immune from suit for damages in this court. As arms of the state, they are entitled to sovereign immunity and are not "persons" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Although a State may waive sovereign immunity, *Lapides v. Board of Regents*, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. *See* S.C. Code Ann. § 15-78-20(e). Accordingly, the undersigned recommends that the claims for damages[2] against the defendants in their official capacities be dismissed.

***Prior Case***

Much of the plaintiff's complaint contains allegations of due process violations in connection with the disciplinary hearing conducted on March 31, 2009, and the decision to transfer him to the MSU on June 25, 2009. This court has already addressed those claims in the pending Report and Recommendation in C/A No. 6:11-2332-JFA-KFM, and hereby incorporates the reasoning set forth therein and declines to re-address them here. Accordingly, those claims should be dismissed from this action, and the only issues remaining for consideration in this case should be the plaintiff's claims that the defendants

---

[2]The plaintiff's claims for prospective injunctive and declaratory relief are not barred. *See Ex parte Young*, 209 U.S. 123 (1908).

"have and continue to violate his due process rights by failing to afford him adequate procedures when determining his continued retainment within the MSU" (*see* doc. 33, pl. resp. m.s.j. at p. 1).

### *Statute of Limitations*

The defendants argue that the plaintiff's claims are barred by the applicable statute of limitations as he was transferred to the MSU on June 25, 2009, and the instant lawsuit was not filed until October 2012.  *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985) (federal courts considering § 1983 claims adopt the forum state's statute of limitations for personal injury claims); S.C. Code Ann. § 15–3–530(5) (three year statute of limitations for personal injury claims).  As set forth above, this court has already addressed the plaintiff's allegations with regard to his initial transfer to the MSU in June 2009, and therefore those claims should not be considered again here.  However, the plaintiff further alleges in his complaint that the defendants "have and continue to violate his due process rights by failing to afford him adequate procedures when determining his continued retainment within the MSU" (*see* doc. 33, pl. resp. m.s.j. at p. 1). The plaintiff makes specific allegations as to the defendants' actions in response to his alleged appeal of the initial decision to place him in the MSU[3] (comp. pp. 2-5).  The plaintiff argues that the statute of limitations is tolled during the time in which he was exhausting his administrative remedies regarding his initial placement in the MSU (doc. 33, pl. resp. m.s.j. at p. 5).  Specifically, he alleges in his complaint that he appealed the initial decision to place him in the MSU by letter to Director Ozmint dated August 22, 2009 (comp. p. 14).  The plaintiff also attached the letter to his complaint (*see* doc. 1-1 at p. 2).  He further alleges that he did not receive a final agency response until October 11, 2010, when Classification Director Gaston informed him that his appeal would not be considered because there was no record of an appeal within the required time period (comp. p. 14; doc. 1-1 at p. 14). The plaintiff also raises a claim of denial of due process with regard to a subsequent decision in April 2011 that he remain in

---

[3]The issues alleged by the plaintiff with regard to his appeal of the decision to place him in the MSU were not before the court in C/A No. 6:11-2332-JFA-KFM.

the MSU, which would not be barred by the applicable statute of limitations (comp. pp. 2-5).

As the plaintiff has raised claims that are not barred by the statute of limitations and as he has raised facts that, if proven, might entitle him to equitable tolling as to claims outside the statute of limitations, the undersigned recommends that the defendants' motion to dismiss on this basis be denied. *See Saucillo v.* Samuels, C.A. No. 0:12-cv-240-TMC, 2013 WL 360258, at *1-2 (D.S.C. Jan. 30, 2013) (holding that plaintiff was entitled to equitable tolling while exhausting his administrative remedies under 42 U.S.C. § 1997e); *Peoples v. Rogers*, C.A. No. 8:10-24-CMC-BHH, 2010 WL 424201, at *2 (D.S.C. Feb. 1, 2010) (same).

## *Due Process Claims*

The plaintiff alleges that his assignment to the MSU imposes upon him "atypical and significant hardship in relation to the ordinary incidents of prison life," and the defendants have deprived him of his substantive and procedural due process rights by "indefinitely confining [him] to . . . the MSU without affording him meaningful notice and a meaningful hearing" (comp. ¶¶ 19-20). Specifically, he claims as follows:

> MSU inmates are denied . . . all outside exercise opportunities, as well as any other outside or out-of-cell activities. Their one hour a day exercise period takes place in a concrete holding cell. Also, unlike all other inmates in the correctional system, MSU inmates must take their exercise period while in full mechanical restraints . . . . Unlike all other prison inmates, . . . . only inmates in MSU are forced to wear full restraints while visiting family. . . . Additionally, unlike all other inmates in the SCDC, inmates in MSU are denied any form of photographs . . . . Unlike all other prison inmates, . . . MSU inmates are completely prohibited from receiving any and all forms of publications in the mail . . . [and] are subjected to extreme sensory deprivation [as] there are no windows, clocks, or mirrors within the MSU.

(Comp. pp. 11-2). Accordingly, the plaintiff alleges that under *Wilkinson v. Austin*, 545 U.S. 209 (2005),[4] he is entitled to and has been denied due process concerning the procedures for release from the MSU and his continued confinement in the MSU. He further contends that SCDC policy OP-22.11 does not provide the minimum due process requirements as required under *Wilkinson*.

The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . And is not otherwise violative of the Constitution." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir.1994) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). The defendants argue that, based upon *Slezak*, the plaintiff's due process claims should be dismissed for failure to state a claim (doc. 25, def. m.s.j. at p. 5). However, given the plaintiff's allegations regarding the specific hardships entailed in assignment to the MSU, he has plausibly alleged that his continued confinement in the MSU gives rise to a liberty interest. Accordingly, dismissal for failure to state a claim at this stage is inappropriate.

This court recommends that the defendants' motion to dismiss for failure to state a claim be denied as to the plaintiff's due process claims regarding his continued confinement in the MSU.[5] This court further recommends that the defendants' motion to dismiss on the basis of qualified immunity be denied at this time as the plaintiff has plausibly alleged in his complaint that his constitutional rights were violated and that his due process rights were clearly established. *See Tobey v. Jones*, 706 F.3d. 379, 386-87 (4th Cir. 2013) ("For [the plaintiff's] First Amendment claim to survive a qualified immunity-based

---

[4]In *Wilkinson*, the Supreme Court determined that assignment to the Ohio Supermax facility imposed " 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' " and gave rise to a liberty interest. 542 U.S. at 223 (quoting *Sandin v. Connor*, 515 U.S. 472 (1995)). The Court ultimately found that the procedures provided for placement of inmates in the super-maximum security prison complied with due process protections. *Id.* at 225.

[5]Should the District Court adopt this recommendation and remand the case for further proceedings to the undesigned, the parties will be given a deadline for filing summary judgment motions as to the plaintiff's remaining claims.


12(b)(6) motion to dismiss [the plaintiff] must have plausibly alleged in his complaint that his constitutional rights were violated.").

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based on the foregoing,

IT IS RECOMMENDED that the defendants' motions to dismiss (docs. 21, 25) be granted in part and denied in part as set forth above. Further,

IT IS ORDERED that the plaintiff's motion for a copy of his complaint and attached exhibits (doc. 35) is granted. The Clerk is directed to provide a copy of these documents to the plaintiff.

July 19, 2013  
Greenville, South Carolina

s/ Kevin F. McDonald  
United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).